JOHN ENGLIS *v.* WILLIAM P. FURNISS, impleaded with WIL-
LIAM H. BROWN.

Where two firms have one common member, and one firm performs work and
labor for the other, no action at law will lie in favor of the creditor firm
against the other, nor in favor of the partners therein who have no interest
in the debtor firm; nor will it lie although the common partner assigns his
interest in the claim to his copartners.

Such a claim must be prosecuted in equity, and it involves the investigation
and settlement of the accounts, so that equity may be done between all the
partners; and when, as between the common partner and his associates in
the debtor firm, "such common partner ought alone to be charged with the
debt, his associates will not be liable unless the equitable claims of his part-
ners in the creditor firm are higher than theirs.

B. sold to F. one half of a steamboat for $25,000, payable in the notes of the
latter, at fifteen months after she should be ready for sea. It was agreed that
B. should fit her out at a limited cost, half thereof payable by F. in his
further notes at fifteen months. B. also contracted separately, to convey to
F. a half interest in another vessel, but failed to fulfill this contract. Both
boats were to be run on their joint account. This design, however, was not
carried out. B. and the plaintiff, E., were partners in the business of ship
carpenters, and repaired the steamboat to the amount of $4,969 71, F. being
frequently at the establishment of B. & E., directing as to the repairs and
exercising acts of ownership over the boat. F. delivered to B. notes to the
amount of $25,000, and again of $5,000, on account of the purchases, with-
out specification. These notes were paid, and advances were made by F. to
B., amounting, with the notes, to $37,000 and upwards, for which F. realized
nothing, except the half ownership in the steamboat first mentioned. B.
failed, and afterwards released to E. his interest in the bill of his firm of B.
& E. for the repairs. *Held,* that E. could not maintain an action at law for
such repairs, in his individual right and as assignee of his partner, B.,
against B. and F., and upon the failure of B. to appear therein, proceed and
obtain a judgment (*a*) against F.

The rights and remedies, legal and equitable, and the disabilities of the
several parties under the circumstances above mentioned, considered.

---

(*a*) See the case of *Decker* v. *Furniss and Brown,* 3 Duer, 291. In that case,
the agree ment between Brown and Furniss received a construction in respect
to the question, whether, by its terms, it passed a present title to one half the
vessel as she was when the contract was made. The Superior Court (Bos-
WORTH and SLOSSON, JJ., concurring) held that it did; but the reverse was the
opinion of the Court of Appeals, upon reviewing the decision. I do not find
the cause, as decided in the latter court, reported.—REP.

THE complainant alleged, in substance, that the defendants, William H. Brown and William P. Furniss, were the owners of the steamboat "Rhode Island;" that on the tenth of November, 1849, the plaintiff and William H. Brown, then being copartners in business, under the firm name of Brown & Englis, made, at the request and for the benefit of the defendants, certain repairs upon the said steamboat, and furnished materials for her repair, and paid money in and about such repair, amounting in all to $4,969 71, by reason whereof the defendants became indebted to said firm in that sum.    It was further averred, that on the seventh of August, 1851, William H. Brown, of the firm of Brown & Englis, assigned and released to the plaintiff all his right, title and interest in the claim of the said firm, and in all moneys to be collected thereon, and that the plaintiff had become the sole owner thereof.    The usual prayer for judgment, as in an ordinary action upon contract, concluded the complaint.

The defendant, Brown, did not appear in the action.

The defendant, Furniss, answered, putting in issue, either by direct negation or by a denial of information, all the averments of the complaint, except the partnership of Brown & Englis.

The issue was referred for trial to the Hon. WILLIAM KENT, who reported the following as his conclusions of fact:

"That the plaintiff, John Englis, and the defendant, William H. Brown, were ship carpenters, and were partners in the city of New York, in the trade and business of ship carpenters, during the years 1849 and 1850.

"That on the 23d of July, 1849, the said William H. Brown purchased and became the owner of one half of the steamer Rhode Island, then engaged in running on Long Island Sound, to and from the city of New York, and on or about the 12th of October, 1849, the said William H. Brown became the purchaser and owner of the remaining half of the said steamer Rhode Island; and that by reason of such purchase, the said William H. Brown caused said steamer to be duly enrolled, in pursuance of the act of congress in such

Englis *v.* Furniss.

case made and provided, in the office of the collector of the port of New York, said enrolment specifying the said William H. Brown as the owner of the said steamer.

"That on the first of November, 1849, the said William H. Brown, being such owner as aforesaid, an agreement was made by and between the said William H. Brown and the said William P. Furniss, to the tenor and effect following, that is to say :

"The present agreement between William H. Brown, ship builder, on the first part, and William P. Furniss, merchant, on the other part, witnesseth : William H. Brown sells to William P. Furniss the one half of the steamboat Rhode Island, burthen 1,000 tons, or thereabouts, with all her tackle, appurtenances, boats and furniture, as she is now completely fitted and furnished for the transportation of passengers on the Sound, at the rate of fifty thousand dollars for the whole boat, payable in fifteen months, in William P. Furniss' notes, favor of said William H. Brown, notes to be dated from the date said steamboat Rhode Island is out of the carpenters' hands, fit and ready for sea, coal and provisions excepted. Said William H. Brown is to proceed and fit up said steamboat Rhode Island in a suitable manner for her to proceed from New York to the Pacific Sea, the Straits of Magellan, and trade along the west coast of America and in the rivers of the same, as may be thought most advantageous by said William P. Furniss after her arrival there. The outfit of said boat for carpenter, smith, sails and rigging and steam machinery, is not to exceed ten thousand dollars, and as much less as possible ; William P. Furniss' half of which is also payable in his notes, favor of William H. Brown, at fifteen months from date said steamboat is done, complete and out of the workmen's hands, and fit for sea. The boat is to have two or more boats, and a launch at least thirty-five feet long by ten wide, and coppered, suitable to land cargo in from on board the steamer in the Pacific.

"William P. Furniss is to be the sole agent for this steamer in the port of New York, and to have the appointing of all

other agents in all other parts, both on the Atlantic and Pacific coasts, and is to be allowed a commission of five per cent. on all receipts for freights and passengers earned by the boat and received by him, as well as on all amounts which may be remitted to him for account of the boat from the Pacific, from time to time, also on account of all disbursements made by him for the boat Rhode Island.

"William P. Furniss is to account, from time to time, for moneys he may receive into his hands to William H. Brown, or other owners of the boat, first paying himself all and any advances he may have made for the steamer Rhode Island.

"It is further understood, that each owner is to insure his own interest in said boat, but that William P. Furniss is at liberty to insure a sum sufficient to cover any advances he may be under at any time for said steamboat Rhode Island.

"A policy of insurance to be kept open to cover shipment of specie from the Pacific to New York, premium to be charged to the boat, as well as one half per cent., William P. Furniss' commission for effecting the same.

"Dated, New York, 1st November, 1849.
      (Signed,)             "WM. H. BROWN,    [L. S.]
                        "WM. P. FURNISS.    [L. S.]
"Signed in presence of
      (Signed,)     "WM. CHALMERS."

"That subsequent to said agreement, the work and materials mentioned in said agreement, and which the said William H. Brown thereon and thereby agreed to put on said steamer, was done by the said firm or partnership of Brown & Englis, the said firm commencing said work and commencing the furnishing of said materials on the 10th of November, 1849, all the work being finished, and the said materials furnished, by the 17th of January, 1850.

"That no contract or agreement in respect to said work and material was made by said Furniss with said firm of Brown & Englis, nor any other contract or agreement in respect to

said work and materials, other than that hereinbefore set forth, bearing date the 1st of November, 1849.

"That the amount of such work and labor was $4,969 71.

"That at the time the said agreement for the purchase of one half of the Rhode Island was made, another agreement was made by said William H. Brown and William P. Furniss, by which Brown agreed to sell to Furniss one half of the steamboat New World, and that Brown and Furniss should be jointly interested in running the said steamship. That after the making of these agreements, and on the 10th of November, 1849, Furniss gave to Brown his four promissory notes of the dates and for the amounts, and payable at the times specified, in a receipt therefor signed by Brown and delivered to Furniss, in the words and figures following:

"Received, New York, 10th November, 1849, of W. P. Furniss, the sum of twenty-five thousand dollars in his notes, in my favor, dated 10th November, at 14 mos. for $6,250; at 15 mos. for $6,250; 17 mos. for $6,250; 18 mos. for $6,250—making twenty-five thousand dollars, on account of purchase of steamboats by him of me.           (Signed,)
     "$25,000.                         WM. H. BROWN."

"That on the 27th day of December, 1849, said Furniss advanced to the said William H. Brown his note, dated on that day, for the further sum of five thousand dollars, on account of the said purchases. That these notes, amounting in the aggregate to thirty thousand dollars, were duly paid by Furniss at the maturity thereof, respectively; and that the notes were given generally on account of the two agreements to purchase, without any specification whether they were to apply to that relating to the Rhode Island or the agreement relating to the New World.

"That the defendant, Brown, never performed his agreement to sell and deliver the New World, and the proposed arrangement to run the two boats on joint account never went into actual operation; and the defendant, Furniss, never received any thing for the notes so advanced and paid by

him to the amount of thirty thousand dollars, except the interest acquired by him in the Rhode Island under said agreement.

"That coal, provisions and outfit were provided for the Rhode Island by Mr. Furniss and paid for by him, and that the whole advances made by Mr. Furniss on account of said two steamboats exceed the sum of thirty-seven thousand dollars, for which Mr. Furniss has not been repaid by Brown, nor received any equivalent except the conveyance of one half of the Rhode Island to him by Brown, under the agreement hereinbefore set forth.

"That on the 21st of January, 1850, the said William P. Furniss made and filed an affidavit in the office of the collector of the port of New York, in which he described himself as one half owner of the said steamboat Rhode Island.

"That on or before the 7th day of August, 1851, the said William H. Brown was indebted to said William P. Furniss for money by him advanced to said William H. Brown in a sum exceeding in amount the amount of the value of the said work and materials furnished on the said steamer Rhode Island as aforesaid.

"That the said William H. Brown, on the 7th day of August, 1851, by an instrument under his hand and seal, released to the plaintiff, John Englis, all the right, title and interest of him, the said Brown, of, in and to the said bill for work, labor and materials, and to all moneys to be collected therefor."

It further appeared in evidence, that the defendant, Brown, failed, individually, before the execution by him of the release to the plaintiff.

The referee reported in favor of a dismissal of the complaint. The plaintiff appealed to the court at general term.

*Augustus F. Smith*, for the plaintiff, made and argued the following points :

I. Brown and Furniss were joint owners of the Rhode Island. The agreement of November 1st makes them so as between themselves and against third persons. The language is, "William H. Brown sells to William P. Furniss." To make the matter sure, Furniss paid Brown, " on account of purchase," on the tenth day of November, $25,000.

II. As against third persons, nothing else being proved but the joint ownership as above mentioned, and the repairs, and both Brown and Furniss would be liable therefor. (*Rich* v. *Coe*, Cowp. 639; *Ingersoll* v. *Van Bokkelin*, 7 Cow. 670, 677; *Marquand* v. *Webb*, 16 J. R. 89.)

III. One step further, and prove, in addition to the ownership as above, and the repairs, that the repairs were done by the copartnership of Brown & Englis, and still no difficulty would exist against a recovery.

Brown and Furniss would not be liable to Brown & Englis in an action at law for work done, or upon a note, but in equity there is no difficulty in the way of a recovery. (1 Story's Eq. Juris. §§ 679, 680; Story on Partnership, 323, 324, and note, also, 343, 344; *Porter* v. *McClure*, 15 Wend. 187.)

IV. Assume that the ownership is proved, that the repairs are done, and by a third person. Assume that, as between Brown and Furniss, Brown is, by agreement, in the first instance, to pay for the repairs. Beyond question, the third person could recover from Brown and Furniss, unless notice of the private agreement was brought home to him, and he assented to it; in other words, unless he gave credit to Brown alone. (*Rich* v. *Coe*, Cowp. 539.)

V. Assume the ownership proved, the repairs done by Brown & Englis, and an agreement between Brown and Furniss that Brown should pay for them in the first instance. Still Brown & Englis are entitled to recover.

1. Brown could make no contract to bind Brown & Englis, when such contract was without the scope of the partnership business. (Story on Partnership, §§ 111, 112; *Gansevoort* v. *Williams*, 14 Wend. 133, 137; *Wilson* v. *Williams*, 14 Wend. 146.)

The business of Brown & Englis was that of repairing ships. It had no connection with the purchase or sale of ships, nor with adventures in ships to California.

If, then, the contract of Brown with Furniss, touching the repairs, had been in the name of Brown & Englis with Furniss, it would have had no binding force, as a contract, on the firm of Brown & Englis, for it was the individual matter of Brown. The context of the agreement shows it.

But the contract did not assume to bind Brown & Englis. It was in the name of Brown alone. (See Story on Partnership, § 102.)

2. If Brown & Englis were not bound by the contract, as a contract, how else were they bound? Certainly no way was left unless it operated as notice to them. And the argument would be, that as they did repairs, and had notice that Brown was to pay for them, they must be held to have credited Brown alone.

3. But the contract could not operate as a notice to the firm.

If one member of a dry goods house buys stocks in the name of his firm, and for account of the firm, but without authority, the firm is not bound. The fact that one of the partners does it, is not notice to the firm. Notice must be brought home to the other partners. (Story on Partnership, § 112.)

If the rule were otherwise, a firm would always be bound by the acts of one member, whether within or without the scope of the partnership business.

Notice to one member of a firm of any matter pertaining to the partnership business, is notice to all. This is the extent of the rule. Beyond this the partners are not agents one for another.

4. The case stated most strongly for the defendant is this:

Brown and Furniss made an agreement that Brown should repair the boat, and be himself repaid the one half due by Furniss therefor in notes at fifteen months. Brown & Englis are then employed to do the work. No notice is given to

Englis of the private stipulation of Brown, but on the contrary, Furniss is frequently at the boat directing about the work, as any other owner would.

Can there be a question that Brown & Englis are entitled to be paid by Brown and Furniss? Can they be turned over to Brown alone?

It has been repeatedly held that one partner cannot pay his private debt with a debt due to the firm, nor with the goods of the firm. In the one case, the debt to the partnership still remains; in the other, the partnership may sue for the price of the goods. (*Evernghim* v. *Ensworth,* 7 Wend. 326; *Gram* v. *Stewart,* 5 Cow. 489; *Dob* v. *Halsey,* 16 J. R. 34.)

The cases are in point. Brown was under obligation to Furniss to repair the boat. (He owed a debt.) He makes the repairs by his firm of Brown & Furniss. (He pays the debt with partnership property.)

VI. The defence hinges upon the agreement of Brown to do the repairs himself. That agreement did not bind Englis. It was individual by Brown, and was beyond the scope of the partnership business.

VII. The evidence of payment offered and given was inadmissible.

1. The alleged payments were on account of the purchase by Brown of the boats Rhode Island and New World, were made to Brown individually and in respect to his individual matters, and were not made to Brown & Englis.

2. The answer did not set up a payment.

VIII. The judgment for defendants should be reversed.

*William Tracy* and *William Curtis Noyes,* for the defendant, Furniss, made and argued the following points:

I. The repairs made upon the Rhode Island were made by Brown & Englis, for William H. Brown, then one of the firm, and not for the defendant, as owner or otherwise.

1. Brown was bound by the contract with Furniss to make them, and Furniss was to pay his half by notes. Brown's knowledge of the duty he thus owed Furniss, was

notice to Brown & Englis of the fact, and precluded the idea that the repairs were made under an implied promise from Furniss to pay Brown & Englis. Besides, no one can doubt he had actual notice also.

2. There was no request on the part of Furniss to make the repairs. The agreement for the sale of the steamer was an executory one; the payment, by the giving the notes, was not to be made until she was repaired and ready for sea. The repairs were for the benefit of Brown alone, to enable him to complete the sale by a delivery. They were not for Furniss' benefit, nor was any credit given to him, as owner; nor was he, as between Brown and the plaintiff and himself, the owner.

II. The repairs, when made pursuant to the contract, did not create a debt from Brown and Furniss to Brown & Englis, and being made to be paid for by Furniss' notes, when the steamer was ready for sea, Furniss having given his notes for them to Brown, in pursuance of the contract, and then having paid the notes, such payment was a valid payment, and extinguished all possible claim that could exist in favor of any one.

III. The claim for repairs by Brown & Englis, Brown himself being bound to make them, and he having made them, in pursuance of his contract, was incapable of assignment by Brown to Englis, so as to give the latter any cause of action.

The assignment of such a claim by one partner to another is nothing but a piece of dishonest effrontery, and, in this instance, has upon its face every evidence of fraud.

By THE COURT. WOODRUFF, J.—In the view that I take of the right of the appellant to maintain this action, it is not necessary that I should consider the question whether the agreement between Brown and Furniss vested a present interest in Furniss, at the time of the execution and delivery thereof, so as to make him a joint owner of the steamboat "Rhode Island," at the time when the repairs in question were made.

For my conclusion is, that assuming such joint ownership of the boat, the plaintiff cannot maintain this action.

In the first place, I deem it quite clear that the plaintiff, by virtue of the assignment to himself by his copartner, Brown, acquired no right which he and Brown jointly had not before the assignment was made. The claim to recover for the repairs, if any existed, against Brown and Furniss, was vested in Brown & Englis; and whatever defences existed as against the latter firm, in favor of Furniss, could not be defeated by Brown's assignment to his partner. The form of the action, in respect to parties, may be altered by such assignment, but in respect to the original title to recover from Furniss, he has a right to treat it as standing upon the footing of a copartnership claim.

In the next place, it may be observed that this is not an action by Englis, founded upon his right as a copartner, to compel Brown, or Brown and Furniss, to restore copartnership funds or property applied by him to the use of Brown and Furniss, and which is necessary for the payment of the debts of the firm of Brown & Englis, or requisite to his indemnity against such debts, and to the payment to himself of all his share in the capital and profits of the last named firm. Conceding, as above suggested, that Brown and Furniss were joint owners of the steamboat, and, as such, liable to third persons, under the terms of their agreement as partners in the transactions relating to the steamboat "Rhode Island," and conceding that (notwithstanding the agreement of Brown to make the repairs in question himself) the firm of Brown & Englis, by doing the work, became creditors of Brown and Furniss, in equity, in such a sense that Englis can not be prejudiced by any private arrangement between Brown and Furniss, respecting the manner in which or party by whom the repairs should be paid for, it is, no doubt, true that Englis may sustain an action against Brown, to which Furniss would be a proper defendant, in which an account should be taken; and if, upon such account, Brown were found indebted to Englis, after the payment of their partner-

ship debts, Brown and Furniss would be held liable to the extent of the repairs done, to make him whole.

Be this as it may, this is not such an action, nor is it, in any respect, of that nature. It is nothing more nor less than an action to recover the value of the work and materials, and the sums of money paid and applied by Brown & Englis in the repairing of the steamboat of Brown and Furniss; and there is no averment in the complaint, or suggestion in the prayer thereof, which places the title to recover upon any other ground than simply that one firm (the defendants) are indebted to the other firm (the plaintiffs). And in respect to such indebtedness, the defendants are, under this complaint, in precisely the same position as if no assignment had been made to Englis.

It is true, that since this court is a court of equity as well as a court of law, the complaint may be said to be a complaint in equity; and in respect to parties to the action, the suit is free from objection in form, but it still remains an action by one copartnership against an alleged other copartnership, in which one partner is common to both firms, to recover an alleged debt by the latter to the former, upon the simple allegation that such a debt exists.

I do not think it necessary to consider whether the action can be at all sustained upon this mere allegation, without some averment that shows that the fund which the plaintiff avers to have come to the possession of Brown and Furniss, is necessary to the just settlement of the affairs of Brown & Englis, irrespective of the fact that Brown assigned his interest in the claim to him; or if he rested his claim upon that assignment, then that as between Brown and Furniss, it ought to be paid over by that firm to Brown. Whether these averments ought to be inserted in the complaint or might be dispensed with, it seems to me quite clear, that the claim of the plaintiff necessarily, and from its very nature, brings into view all the equities existing between the parties; and the moment it appears that, as between Brown and Furniss, it is inequitable that the fund should be taken from the latter firm, Eng-

lis cannot require its payment without showing a higher equity; Brown is his partner, and he cannot claim such payment, nor can Englis make such claim through Brown; neither can he separate himself from Brown, and escape the effect of the rule, that notice to one partner is notice to all, without showing some equity that is peculiar to himself.

It is not denied that Brown undertook to make the repairs himself. It is found by the referee, and the evidence clearly warrants it, that upon a settlement between Brown and Furniss, the latter has advanced to Brown enough, and more than enough, to cover the whole amount.

At law there could be no recovery by Brown & Englis against Brown and Furniss, under these circumstances, because Brown cannot sue himself, and because at law Brown cannot become indebted to himself; and so at law (as insisted by the plaintiff's counsel) there can be no set off of a debt due by the copartner against a copartnership claim, nor will the fraudulent application of the copartnership claims to the private debt of one partner, defeat the recovery by the firm. But when, by reason of the membership of the one partner in both firms, the alleged creditor firm comes into equity for relief, they come to do equity as well as to seek it. The complaining plaintiffs come also upon their own equities, which are alleged to be prejudiced. These equities cannot be ascertained, nor can it be discovered what is requisite to the doing of equity, without ascertaining what is equitable as between all the parties.

In *Bailey* v. *Bancker*, 3 Hill, 190, where one stockholder sued his associates (the statute having in principle established a relation like that of partners between themselves, and also as to third persons) for a contribution, BRONSON, J., in giving the opinion that the action could not be sustained, says, "they may go into chancery for an account, and have the claims of all parties settled upon equitable principles." So, where a necessity to go into chancery arises from the fact that two firms have one or more common members, the rule that whatever assets arose out of the business of the one firm,

shall be deemed to belong to them, though it consists of an indebtedness by the other firm, does not over-ride the equity of the partners in the latter to compel the common partners to do justice to them.

The case of *Jacand et al.* v. *French et al.* 12 East, 317, goes to a great length in affecting a copartnership by means of what is done with another firm, having, with the former, a common member; and when such common member had agreed with the drawer of a bill that his last named firm should pay it, and, acting for such firm, had received securities out of which funds were realized for the purpose, it was held that his other firm, being holders of the bill, could not recover of the acceptor. As to him the bill was satisfied, and he could not, by uniting with his partners in the last named firm, maintain the action, although not a dollar had come to their hands, and although the other partners were ignorant of the arrangement. In some respects that case resembles the present. The firm of Englis & Brown cannot divest themselves of the consequences of Brown's knowledge that the repairs they were making were done for his benefit, and in performance of his express undertaking to do them himself, and, therefore, as before, when compelled to come into equity, the equities existing between Furniss and Brown can only be overcome by showing a higher equity in favor of Englis. So far as his claim rests upon Brown's equity, he must fail. He cannot, therefore, in my judgment, maintain the action upon any ground, unless he shows that upon a settlement with Brown this money is necessary to the adjustment of their accounts.

I do not, in this view of the subject, mean to exclude the idea that where a partner in the one firm, by his dealings with another firm, in which he is also a member, has diverted partnership property in such wise as to amount not only to a withdrawal of capital, but to a contravention of the copartnership articles, the injured partner may not have a bill to compel its restoration for the purposes of the trade, or that a court of equity will not in general treat the assets of a firm as a

fund devoted to the payment of copartnership debts and the fair settlement of the accounts between the partners, and marshal them accordingly wherever they obtain proper jurisdiction for that purpose. But the plaintiff has not placed his present claim upon that footing, nor shown any facts warranting a judgment founded upon such an equity. He comes as assignee of Brown's interest in the claim, insisting that he has become sole creditor of Brown and Furniss, and seeking to recover on that ground, not for the copartnership purposes of Brown & Englis, but for his own sole use.

Another view of the subject seems to me to present a like obstacle of the plaintiff's recovery. Furniss, by force of the covenant of Brown to make the repairs himself, and in virtue of the advances made to Brown, which render it inequitable that he should be required to pay the money, has become entitled in equity to every defence which Brown himself could make to an action by Englis to recover for those repairs, and Brown, by uniting with Englis in the action, could not deprive him of this right; and what Brown could not do directly, he cannot accomplish indirectly by an assignment to Englis upon which he may sue alone. Suppose, then, Englis had filed this complaint against Brown and Furniss, without avowing any assignment by Brown to himself, it seems to me clear that Furniss, upon showing Brown's agreement to make the repairs, and that he had paid or advanced to Brown moneys sufficient, and more than sufficient, upon a due accounting between them, to cover this claim, might successfully insist that until Englis established a right to compel Brown to restore the money for the protection of his equities as a copartner, he cannot recover. Furniss, under such circumstances, cannot in equity be compelled to pay this money to be enjoyed by Brown in common with Englis, and, as the case may be, to come into Brown's pocket in the division of profits between them; and, as before suggested, Brown's assignment to Englis does not drive Furniss from this position.

If it be suggested that Furniss has his remedy over against Brown, the answer is obvious; a court of equity will not,

when full justice can otherwise be done, compel a party to resort to such circuity of action. And besides this, the proof showed without contradiction, that Brown failed in July, 1851, and before his assignment of this claim to Englis, and is (in his private business) insolvent. The report of the referee, though it contains no specific finding of that fact, exhibits a finding in support of that conclusion. I hold it inequitable that Brown, an insolvent, should, on the 7th of August, 1851, (the date of his assignment to Englis,) take from Furniss moneys which, as between Brown and Furniss, the former was bound both at law and in equity to pay, and throw them into the hands of his firm of Brown & Englis, who are not insolvent, where they would (for aught that appears irrespective of the artifice resorted to, viz., Brown's assignment) have been given back to Brown himself, or his representatives, as a dividend of the copartnership effects. Nothing less than higher equities shown by Englis as copartner, existing independently of any assignment by Brown to him, can entitle him to insist upon any such payment by Furniss.

These views do not conflict with the rule that one partner may not pay his own debt with the property of his firm, or that he may not release a debt due to his firm in consideration of a benefit derived to himself alone, or that an individual debt of a partner cannot be set off against a copartnership claim; and there are other cases, no doubt, in which a firm, standing in a court of law upon their joint title, cannot be defeated by the transactions of one of the partners in his private dealings.

But when the firm are compelled to come into a court of equity to assert the copartnership title, that tribunal will take care that in recognizing the joint title of the firm, and enforcing it against the act of one of the members, no injustice is done; and where such member is insolvent, will not take money from a third person which such member ought to pay, unless protection of the rights of the other partners makes it necessary.

In the present case, stating it most strongly in the plain-

tiffs' favor, it is the plain duty of Brown to pay for these repairs. He having become insolvent, Furniss has the right to insist that his interest in the copartnership should be so applied. Indeed, it may better perhaps be said that Brown has himself made that application by repairing the ship at the yard of the firm.

Nothing in the case impeaches the good faith of Furniss in this matter. Brown was engaged in ship-building on his own account. In the department of repairing, Englis was his partner; and, doubtless, Englis was entitled to claim from Brown and Furniss that the bill for repairs be regarded as copartnership assets. But the circumstance that the repairs were so done, does not warrant any imputation upon Furniss of collusion with Brown to appropriate the firm property to Brown's private purposes. Even if he is to be deemed chargeable with notice of Brown's partnership with Englis in the business of repairing, he has reason to believe that what was done was done under Brown's covenant with him; and it is not bad faith on his part that he assumed that Brown caused these repairs to be made upon his own responsibility to Englis, and upon a full understanding with him on the subject.

Had Brown, when he agreed to make these repairs, had no interest in the ship, but having made a contract to repair the vessel upon terms agreed upon, had taken her into his own possession for that purpose, and the repairs had been made by himself and Englis, the right of Englis & Brown, as partners, to recover for such repairs, notwithstanding advances made by Furniss to Brown in good faith, and in reliance upon such covenant, would not have been free from doubt. And it appears, that although Furniss' advances were not in terms applicable to this one vessel, they were made in reliance upon Brown's two agreements—only one of which was in any sense performed—and Furniss is clearly, I think, entitled to the benefit of them as an advance upon that relating to the Rhode Island, for it was made in reliance on that agreement, though not solely on that agreement. But I do not pursue

this inquiry, nor rest my conclusion upon any solution of the doubt suggested.

. The precise grounds upon which the decision of the referee was based, do not appear by his report. His conclusion of law is given in sweeping terms, without informing us of the particular conclusions from which his result was derived. But, for the reasons above stated, I think his decision was correct, and should be sustained by an affirmance of the judgment.

Judgment affirmed.