WILLIAM A. TAYLOR, Appellant, *v.* ROBERT H. THOMPSON et al., Respondents.

1. FALSE REPRESENTATIONS — ACTION FOR DAMAGES WILL NOT LIE BETWEEN MEMBERS OF TWO FIRMS HAVING ONE MEMBER COMMON TO BOTH. One induced by the false representations of a member of a firm to purchase the interests of his copartners and take their place in a new firm, to be composed of himself and such partner, cannot individually maintain an action against the firm to recover the damages alleged to have resulted therefrom; nor can it be maintained by the new firm, since an action at law for deceit will not lie between members of two firms having one member common to both. If any cause of action exists, the rights of the parties must be adjusted by a court of equity.

2. WHEN FIRM NOT LIABLE FOR FALSE REPRESENTATIONS OF PARTNER. Where upon the trial of such an action it appears that the partner making the false representations acted independently in negotiating the sale and principally and primarily for his own benefit and not as agent of the firm, his associates cannot be held liable in any event.

*Taylor* v. *Thompson*, 74 App. Div. 320, affirmed.

(Argued June 22, 1903; decided October 6, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 24, 1902, affirming a judgment in favor of defendants entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Austen G. Fox* and *William D. Leonard* for appellant. It was at least a question of fact for the jury whether or not

Culbert was the agent of the defendant. (*Lindmeir* v. *Monahan*, 64 Iowa, 24; Lindley on Part. 167; *Lovell* v. *Hicks*, 2 G. & C. 46; *Taylor* v. *Thompson*, 62 App. Div. 170; *Ahern* v. *Goodspeed*, 72 N. Y. 108; *Bradner* v. *Strang*, 114 U. S. 555; *Barwick* v. *E. J. S. Bank*, L. R. [2 Ex.] 259; *Mackay* v. *C. Bank*, L. R. [5 P. C.] 394; *Swire* v. *Francis*, L. R. [3 App. Cas.] 106; *Houldsworth* v. *Glasgow Bank*, L. R. [5 App. Cas.] 317; *Indianapolis, etc., Ry. Co.* v. *Tyng*, 63 N. Y. 653.) Culbert made false representations to plaintiff. Plaintiff relied upon them to his damage. (*Sandford* v. *Handy*, 23 Wend. 260; *Fairchild* v. *McMahon*, 139 N. Y. 290; *Townsend* v. *Felthousen*, 156 N. Y. 618; *Mead* v. *Bunn*, 32 N. Y. 280; *Simar* v. *Canaday*, 53 N. Y. 306; *Hadcock* v. *Osmar*, 153 N. Y. 608; *Rothschild* v. *Mack*, 115 N. Y. 7; *Kunz* v. *Kennedy*, 147 N. Y. 130; *Redgrave* v. *Hurd*, L. R. [20 Ch. Div.] 13.) The respondents received and retained all the benefits of the contract obtained by Culbert's fraud, and are bound to compensate the injured plaintiff. (*Mayor* v. *Dean*, 115 N. Y. 556, 561, 562; *Bennett* v. *Judson*, 21 N. Y. 538; *Hathaway* v. *Johnson*, 55 N. Y. 96; *Sandford* v. *Handy*, 23 Wend. 260; *Griswold* v. *Haven*, 25 N. Y. 595; *I. P. C. R. Co.* v. *Tyng*, 63 N. Y. 653; *Ins. Co.* v. *Minch*, 63 N. Y. 145; *Krumm* v. *Beach*, 96 N. Y. 398; *Jones* v. *Jones*, 120 N. Y. 598.)

*John J. Crawford* for respondents. The action cannot be maintained for the reason that it is brought upon the joint claim of Culbert & Taylor, and is based upon Culbert's own fraud. (*Medbury* v. *Watson*, 6 Metc. 246; *Patten* v. *Gurney*, 17 Mass. 182; *Prouty* v. *Whipple*, 10 Wkly. Dig. 387; *Mosgrove* v. *Golden*, 101 Penn. St. 605; *Englis* v. *Furniss*, 4 E. D. Smith, 587; *Yeamans* v. *Bell*, 151 N. Y. 230; *Bosanquet* v. *Wray*, 6 Taunt. 597; *Jones* v. *Yates*, 9 B. & C. 532; *Schnaier* v. *Schmidt*, 13 N. Y. Supp. 725; *Mangles* v. *Sherer*, 21 App. Div. 507.) Culbert was not the agent of the respondents, and had no authority to make representations on their behalf, and the appellant had notice of this

from the circumstances of the case. (*Udell* v. *Atherton*, 7 H. & N. 172.) The respondents are not in the position of one who has profited by the fraud of an agent, but, on the contrary, the appellant seeks through the fraud of his copurchaser to obtain the property for less than the respondents were willing to accept. (*Udell* v. *Atherton*, 7 H. & N. 172.)

Bartlett, J. The plaintiff seeks to recover in this action damages by reason of alleged false representations made by the defendants upon the sale of a certain business which had been conducted by them under the firm name of Thompson, Culbert & Company. This sale took place in October, 1889, and in order to deal with the questions of law presented a history of the facts is essential.

The defendant's firm of Thompson, Culbert & Company were in October, 1889, and for years prior thereto, importers of wines and liquors at 39 Broadway, in the city of New York. The defendants John and Robert Thompson were brothers. John Thompson was seventy years of age at the time of this transaction and Robert was a very much younger man. Robert Thompson and the defendant Norris had practically nothing to do with this business except as contributors of capital, the management being left to John Thompson and the defendant Culbert. John Thompson contributed thirteen thousand dollars as capital and Robert Thompson and Norris contributed six thousand five hundred dollars each. Culbert, who was not financially responsible, furnished no capital and received one-fifth of the profits for services rendered.

The defendants Robert Thompson and Norris were at this time, respectively, president and vice-president of a corporation known as the Thompson & Norris Company, manufacturers of corrugated paper for packing purposes, and had for many years been doing business in the city of Brooklyn.

In the month of August, 1889, the members of the firm of Thompson, Culbert & Company became aware of the fact that through the dishonesty of clerks a defalcation had occurred

amounting to thirty thousand dollars, being somewhat in excess of the paid-up capital of the business. After considerable discussion the Thompsons and Norris concluded that it would be better to wind up the business, as John Thompson was advanced in years and greatly disturbed by the defalcation, and Robert Thompson and Norris had no disposition to carry on a business outside of their corporate interests, to which reference has already been made.

When Culbert was advised of the disposition on the part of his partners to wind up the concern, he stated that he would like to retain the business. The result was that Culbert's partners stated to him, in substance, that if he could raise the money so as to return to them their capital and relieve them from all obligations to the creditors of the firm, they would sell the business. Culbert thereupon had an interview with his friend, Robert E. Bonner, who introduced him to the plaintiff Taylor. Bonner was a man of means and agreed to advance to Taylor the necessary amount to purchase this business if Taylor was satisfied to enter into business relations with Culbert. After certain negotiations between Taylor and Culbert a firm was formed, under the style of Culbert & Taylor, having for its object the taking over of said business. The assets of the business were ultimately turned over to Culbert & Taylor, the defendants Thompson and Norris received their contributions of capital and were released from their obligations to the creditors of the firm of Thompson, Culbert & Company.

Taylor, in the following June, 1890, claims to have ascertained that Culbert made fraudulent representations as to the assets and liabilities of Thompson, Culbert & Company, but notwithstanding this fact continued in firm relations with him for two years thereafter. Taylor testified in this connection as follows: " When I discovered the evidence of this fraud on the thirtieth day of June, 1890, Mr. Culbert was my partner and continued to be such for two years after that time. I called his attention to the fact that he had perpetrated a fraud upon me. I did that, I think, about September of that year and continued in partnership with him after that for

nearly two years. He was a full partner and entitled to half interest. He did not draw out a full one-half. I permitted him to be there with certain rights. I had him pretty well covered. I am still carrying on the business. It has been a profitable business since I took possession of it; it was not at the time I took it."

At the expiration of these two years Culbert is said to have assigned his interest in the firm to Taylor, and on the 16th day of January, 1893, this action was commenced by Taylor, individually, naming as defendants the partners in the former firm of Thompson, Culbert & Company, including Culbert. The defendants John Thompson and Culbert were not served and have not appeared. It is also to be observed that Culbert was not produced as a witness on the trial of this action.

This action has been twice tried. The plaintiff recovered a judgment on the first trial, which was reversed by reason of errors in the charge of the trial judge.

It should also be observed that notwithstanding the fact that Culbert is said to have assigned to Taylor his interest in the firm of Culbert & Taylor, that assignment was not offered in evidence on this second trial.

The theory of the plaintiff's action apparently is, that Culbert, as a member of the firm of Thompson, Culbert & Company, fully representing them in law as their agent, made certain false representations to him in negotiating the sale of this business as to the value of the assets and the amount of the liabilities, upon which he relied, to his damage of thirty-three thousand dollars and upwards.

The main contention of the plaintiff and appellant is, that he was entitled to go to the jury on the question of what relation existed between him and Culbert during these negotiations which resulted in the sale of the business.

We are of the opinion that there are certain undisputed facts upon which the directed verdict can stand. It is true that there is a conflict of evidence as to what occurred when these parties met at the office of counsel to close matters. Robert Thompson and Norris testified that they told Taylor

at that time and in the presence of counsel that they had nothing whatever to do with the management of this business and that they did not know what the assets of the business consisted of.

John Thompson testified on the first trial, and his testimony was read on the second trial, he having died in the interval, referring to his interview at office of counsel, as follows : " My brother got up and said, ' Mr. Taylor, we know nothing about the assets, whether they were worth ten thousand dollars or one hundred thousand dollars. We sold out to Mr. Culbert on their appraisal, and we know nothing whatever about whether they are worth anything or a good deal.' "

These statements were corroborated in the main by counsel. The plaintiff swore witnesses who denied that these statements were made.

If the case rested on this portion of the evidence it certainly should have been submitted to the jury. It, however, stands uncontradicted, as between Culbert and his partners, that he was to raise money and take over the business if he wished to continue it in connection with any third party. Culbert had been the partner of plaintiff for years and a member of a firm formed for the purpose of taking over this business, concededly, and the fact that he was not sworn at the trial, nor served in this action, permits the presumption that he could not have aided the plaintiff's case if placed upon the witness stand.

The defendants' theory of the action rests upon this uncontradicted evidence that the Thompsons and Norris wished to abandon the business upon being paid the amount of their capital, and be relieved from liabilities for the debts of the firm of Thompson, Culbert & Company; that Culbert was acting wholly in his own interest, wishing to preserve the business for himself and some third person whom he might induce to advance the necessary capital and become associated with him in the conduct of the business.

As already pointed out, this transaction took the form, so far as the papers are concerned, of a transfer from the firm of

Thompson, Culbert & Company to the firm of Culbert & Taylor. Taylor, when on the stand, testified that he took a bill of sale at the time he purchased. This is error, as there is attached to his amended complaint a bill of sale from the firm of Thompson, Culbert & Company to the firm of Culbert & Taylor.

It also appears by the dissolution agreement, whereby the firm of Thompson, Culbert & Company was dissolved, that its property, assets and good will were to be sold to Robert B. Culbert and William A. Taylor. The real transaction, without regard to the forms which the parties saw fit for convenience to adopt, is made very clear by evidence that is not disputed.

As above stated, the testimony of John Thompson, taken at the first trial, was read on the second trial, he having died meanwhile. The beginning of the transaction now before the court is therein disclosed with great clearness. He refers to the time when he first learned of the defalcation, and in that connection he testified : " I sent immediately for my brother and Mr. Norris, and they came and I told them what had happened. I think I went over to Brooklyn to see them afterwards, and we decided then and there to sell out our claim upon the partnership, and make some disposition of the business, go into liquidation and pay off the debts, and either go on with the business under some other name or retire entirely. I came back and told Mr. Culbert of it. ' Well,' he said, 'if that is so, I would like to retain the business.' Mr. Culbert said, ' Mr. Bonner, who was a friend of mine, then told me he would assist me at any time that I wanted to go into business. And if we were willing to sell out to him that he would see Mr. Bonner and see if he would furnish the money to buy out the stock.' I told him he could see him ; that I was willing to sell out to him, and all I wanted was my money that I put into the firm. He asked if I would see the other two. I told him I would, and went and saw them, and in talking it over we all agreed to sell out, provided we got back the capital we put in the firm, and interest from the last of February to

three o'clock on the day we would give them up possession. I came back and told Mr. Culbert and he said he would go and see Mr. Bonner. He went off and came back and said that Mr. Bonner told him to look the matter over, and if it was all right he would furnish him the money to buy it up. ' Now,' he said, ' if I buy this, you will stay with me for a short time, not to exceed three months, and attend to the office while I attend to the outside business, until I get some man to take care of the office,' which I agreed to do, and told him I would, provided he paid me my money and the interest, which he promised to do, if, on examination, he found the business or capital was not much depleted. * * * The terms mentioned to Culbert upon which we were to sell out, were that we were to be paid our capital and interest; and all debts of the firm, foreign and domestic, were to be provided for. This conversation was in August. * * * I first heard mention of Mr. Taylor about the last of September or the first of October. Mr. Culbert first mentioned him to me. He told me that Mr. Bonner had found a man to take charge of the office and have him take an interest in the business — a man by the name of Taylor, whom he did not know, he said, and was kind of sorry for it, because he did not know Mr. Taylor, and he might make it very unpleasant for him in the transaction of business, but he was going to be the head of the firm himself, and things had to go as he said himself; that Bonner was furnishing the money to buy the concern out."

These statements of John Thompson are corroborated by Bonner, who was sworn by the plaintiff. This witness alludes to the first interview he had with Culbert in this matter. He said : " We were lunching together, as we did once in a while, and he spoke of the defalcation, * * * and said that he was afraid, as the result of the whole thing, that he was going to be forced out of the business unless he could get capital to go in, and if he could get capital to go in he claimed that he had a very good business proposition, which would pay anybody and would take about sixty thousand dollars. That, I

think, was about the substance of the first conversation we had."

When cross-examined as to this interview, Mr. Bonner said : " The idea was that he was afraid it might be dissolved and reorganized and he left out. He did not want to be left out. He wanted to stay in. Q. And he wanted you to assist him, so that he could stay in, did he not ? A. Well, he didn't put that as broadly as that, at first. Q. How did he put it ? A. Well, he was just telling me his whole history, you know — his history like one friend talks to another, and he led up to it by degrees; it resulted, practically — Q. He was telling you the trouble he was in ? A. It resulted in that, without absolutely saying here, ' won't you lend me this money right straight out.' "

It is clear from the uncontradicted evidence of these two witnesses that Culbert was primarily acting in his own interest, and that it was a matter of indifference to the other partners in the firm of Thompson, Culbert & Company whether the transfer was made to him or to some person who could raise the money and enter into business relations with him, or to a firm to be formed.

If we adopt the plaintiff's theory of the action, that Culbert was throughout acting as the agent of the firm of Thompson, Culbert & Company, and had made false representations which rendered himself and partners liable to the persons purchasing the business, relying upon those representations, then it is clear that this action should have been brought in the firm name of Culbert & Taylor, as they were on the face of the proceeding the purchasers of the business and received a written bill of sale, to which reference has already been made.

It is difficult to understand from the standpoint of plaintiff's theory how he can maintain this action as an individual. Assuming, therefore, that this action should have been brought by the firm of Culbert & Taylor, we are met by insuperable legal difficulties. This is an action at law to recover damages for deceit, and it is well settled that no action can be main-

tained at law between the members of two firms having one member common to both. (*Engliss* v. *Furniss*, 2 Abb. Pr. 333; *Bosanquet* v. *Wray*, 6 Taunt. 597; *Jones* v. *Yates*, 9 Barn. & Cress. 532, 538.)

In *Engliss* v. *Furniss* (*supra*) it was held that the action would not lie, although the common partner assigned his interest in the claim to his copartners.

In the case at bar it is claimed that Culbert had assigned to Taylor any rights he had in the premises, but as above pointed out, the assignment was not offered in evidence, and if it had been it would not have added any support to this form of action.

If either the firm of Culbert & Taylor, or of Taylor individually, had any cause of action against one or more of the defendants, a judgment adjusting the rights of the various parties could only be rendered by a court of equity. (*Bosanquet* v. *Wray*, *supra*, at p. 605.)

It, therefore, follows, assuming the plaintiff's theory of the action to be correct, that the trial judge was justified in directing a verdict for the defendants for the following reasons: That plaintiff failed to show a state of facts supporting any action by him individually against the defendants; that the firm of Culbert and Taylor, if parties plaintiff, could not maintain this action at law against the defendant firm, Culbert being a common partner of both firms.

If, on the other hand, we assume the defendants' theory to be correct, that the undisputed facts warrant the conclusion that Thompson, Culbert & Company sold out to Culbert, agreeing to transfer the property to him, or to such person or firm as he might form, then in negotiating with plaintiff Culbert was primarily and principally acting for himself and in his own interest. This being so, and in view of the long standing business relations between the plaintiff and Culbert after the alleged fraudulent representations were discovered, according to the testimony of the plaintiff, Culbert cannot be regarded as having acted as the agent of the defendant firm, but rather as carrying on an independent negotiation, for his

12

own benefit, between himself and the plaintiff. The trial judge was, therefore, justified in directing a verdict for the defendants on this view of the case.

We are of the opinion that in any aspect of the case the judgment of the Trial Term and the Appellate Division should be affirmed, with costs.

O'BRIEN, VANN, CULLEN and WERNER, JJ., concur; PARKER, Ch. J., concurs in result; MARTIN, J., absent.

Judgment affirmed.